UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:21-CV-00132-JHM

PROGESSIVE CASUALTY INSURANCE COMPANY                  PLAINTIFF

v.

LINDSEY FOX, INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE OF
JOSHUA FOX                                                                                     DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Lindsey Fox's Motion to Dismiss [DN 8]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Dismiss is **GRANTED**.

### I. BACKGROUND

Barry and Vickie Fox were insured under an automobile insurance policy with Progressive Casualty Insurance Company ("Progressive"). [DN 8-1 at ¶ 27]. The relevant coverage provision states Progressive will "pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured [or underinsured] motor vehicle because of bodily injury[.]" [DN 1-3 at 20]. The policy then defines an "insured person" as "you, a relative, or a rated resident[.]" [*Id.* at 21]. It clarifies "you" as "the person shown as the named insured on the declarations page[.]" [*Id.* at 6]. The declarations page lists only Barry and Vickie in the "Drivers and Resident Relatives" section. [DN 1-4 at 1]. Continuing, the policy defines a "relative" as "a person residing in the same household as you, and related to you by blood, marriage, or adoption . . . ." [DN 1-3 at 6].

During the policy's coverage period, Barry and Vickie's son, Joshua Fox, tragically died when his car collided with another driver. [DN 8-1 at ¶ 17]. Following this accident, the

1

administratix of his estate and the Defendant in this case, Lindsey Fox ("Fox"), asked Progressive to remit the policy limits for Joshua's accident under the uninsured/underinsured motorist coverage provision. [*Id.* at ¶ 29]. Progressive refused. [*Id.* at ¶ 30]. Over the following weeks, the parties debated whether the policy covered Joshua. *See* [DN 8-2].

Eventually, on December 9, 2021, Progressive filed this suit, asking the Court to declare Joshua outside the coverage of Barry and Vickie Fox's insurance policy. *See* [DN 1]. On February 23, 2022, Fox sued multiple defendants in Kentucky state court, including Progressive. *See* [DN 8-1]. She alleges Progressive breached the insurance policy and violated numerous Kentucky state laws by refusing "to remit the Policy limits . . . as requested . . . ." [DN 8-1 at ¶¶ 62–86]. In this action, she now seeks to dismiss Progressive's action. *See* [DN 8].

## II. DISCUSSION

Fox's Motion to Dismiss raises multiple jurisdictional arguments against Progressive's declaratory judgment request. [*Id.*]. The Court addresses each in turn.

**A. Ripeness**

To start, Fox argues Progressive's declaratory judgment request is not yet ripe under Article III of the Constitution. [DN 8 at 4–6]. "Article III of the Constitution confines the federal courts to adjudicating 'cases' and 'controversies.'" *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citing U.S. Const. art. III, § 2). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

sought." 28 U.S.C. § 2201(a). "In declaratory judgment actions, it is often difficult to draw a line between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies." *Kardules v. City of Columbus*, 95 F.3d 1335, 1343 (6th Cir. 1996). As the Supreme Court has said, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Magaw*, 132 F.3d at 284 (6th Cir. 1997).

Fox contends Progressive has not yet "suffered any injury in fact." [DN 8 at 5]. According to Fox, Progressive had not yet paid—or been found liable to pay—insurance benefits to Fox. [*Id.*]. Additionally, at the time Progressive filed its declaratory judgment request, "there [was] neither a claim for indemnity nor a claim for defense[.]" [*Id.* at 6]. Both parties admit that Fox "requested payment of the uninsured and underinsured Policy limits." [*Id.* at 3]; *see also* [DN 10 at 4].

This case is ripe for adjudication. Although Progressive has not yet made any payments, prior to litigation, Fox demanded "payment of the uninsured and underinsured policy limits." [DN 8-1 at ¶ 29]. In fact, Progressive's refusal to pay Fox later formed the basis of her state court breach of contract claim. [*Id.* at ¶ 63]. Based on these facts, "a substantial controversy" existed between the parties at the time Progressive filed its declaratory judgment request: Fox wanted Progressive to pay the policy limits, Progressive disagreed. Other cases within this district have deemed declaratory judgment requests ripe in similar circumstances. *See, e.g., Countryway Ins. Co. v. Pittman*, No. 5:12-CV-00146, 2013 WL 416294, at *1 (W.D. Ky. Jan. 31, 2013) (finding a declaratory judgment request "ripe for adjudication" when the insured

3

demanded payment); *Acuity, a Mut. Ins. Co. v. Decker*, No. 4:16-CV-00068, 2017 WL 3710805 (W.D. Ky. Aug. 28, 2017); *see also Evans v. Cincinnati Ins. Grp.*, No. 4:12-CV-00086, 2013 WL 2149848, at *2 (W.D. Ky. May 16, 2013). In short, Progressive and Fox "hav[e] adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co.*, 312 U.S. at 273.

**B. The Declaratory Judgment Act**

But, even if this case is ripe under Article III, Fox posits that the Court should not exercise jurisdiction under the Declaratory Judgment Act. [DN 8 at 6–15]. Under the Declaratory Judgment Act, district courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "Exercise of jurisdiction under the Declaratory Judgment Act is not mandatory." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) (internal citation omitted). The Sixth Circuit established five factors to determine whether a court should exercise jurisdiction over a declaratory judgment action:

> (1) Whether the judgment would settle the controversy;
> (2) Whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations in issue;
> (3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) Whether there is an alternative remedy that is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). "The relative weight of the

4

underlying considerations of efficiency, fairness, and federalism will depend on the facts of the case." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

### (1) Factors One and Two: Settlement of the Controversy and Clarification of Legal Relations

The first factor asks "whether the declaratory action would settle the controversy." *Grand Trunk*, 746 F.3d at 326. The second factor asks "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Id.* "Because 'it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue,' the inquiries required by these two factors often overlap substantially." *United Specialty Ins. Company v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (quoting *Flowers*, 513 F.3d at 557)).

Starting with the first factor, two lines of precedent previously existed within the Sixth Circuit on whether a "declaration action would settle the controversy." *See, e.g., Cole's Place*, 936 F.3d at 397–98. One line held a declaratory judgment request does settle the controversy when it "resolves the dispute between the insurer and insured over who will pay for the state-court litigation." *Id.* at 397; *see also Flowers*, 513 F.3d at 556; *Hoey*, 773 F.3d at 760–61. The other line held a declaratory judgment must settle the issue "between all relevant parties . . . ." *Cole's Place*, 936 F.3d at 397; *see also Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *Bituminous*, 373 F.3d at 813–14. The Sixth Circuit's "most recent decisions have held that district courts did not abuse their discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity." *Cole's Place*, 936 F.3d at 397. "Where the insurer is not a party to the state-court action, insurance-coverage issues are not before the state court, and it will not be necessary for the district court 'to inquire into matters being developed through state court discovery,' the Sixth

5

Circuit has found the first *Grand Trunk* factor to be met." *Burlington Ins. Co. v. La Movida Inc.*, No. 3:18-cv-650, 2019 WL 10476279, at *2 (W.D. Ky. Sept. 20, 2019) (quoting *Flowers*, 513 F.3d at 556).

Progressive insists this declaratory judgment action involves a single legal issue: whether Barry and Vickie Fox's insurance policy covers Joshua, thus requiring Progressive to remit the cost of the accident to Fox. *See* [DN 1 at 4]. This description oversimplifies the necessary analysis. For coverage under the policy's uninsured/underinsured provisions, Joshua must qualify as either "you," a "relative," or a "rated resident." [DN 1-3 at 21]. First, since Joshua's name is not listed on the "named insured on the declarations page," by the policy's definitions, he does not fall under the term "you." [*Id.* at 6]. Second, Fox does not assert Joshua is a "rated resident." *See* [DN 8]; [DN 8-1]. Therefore, for the insurance policy to cover Joshua, he must qualify as a "relative"—to satisfy that definition, he must have "resided" with Vickie and Barry Fox. [DN 1-3 at 6]. While the Court could interpret the word "reside" within that definition, to fully determine the parties' rights and obligations, it would need to make a factual determination of where Joshua "resided."

Thus, a declaratory judgment here would not "settle the controversy." *Grand Trunk*, 746 F.2d at 326. Even if the Court determined the parties' legal rights under the insurance policy, it would have to engage in fact-finding to resolve the coverage dispute. Furthermore, the Kentucky state court is currently inquiring into these same factual and legal issues; Fox's breach of contract against Progressive raised the issue of whether Progressive had an obligation under the policy to reimburse Fox for Joshua's accident. *See* [DN 8-1]. This first factor weighs against exercising jurisdiction.

Similarly, for the second factor, a declaratory judgment here would not "serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. A federal declaratory judgment need "not resolve the rights of all parties in the state-court litigation," only the insured and insurer. *Cole's Place*, 936 F.3d at 398–99. To fully declare Progressive's obligations under the policy, the Court would need to determine Joshua's residency. This outstanding factual issue means a declaratory judgment would not fully resolve the legal relations between Progressive and Fox. Like the first factor, this second factor weighs against exercising jurisdiction.

### (2) Factor Three: Procedural Fencing and *Res Judicata*

Next, the Court addresses "whether use of the declaratory judgment is motivated by 'procedural fencing' or is likely to create a race for *res judicata*." *Flowers*, 513 F.3d at 558. This factor "usually does not weigh heavily in the analysis." *Cole's Place*, 936 F.3d at 399. Courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Flowers*, 513 F.3d at 558 (citations omitted). "A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Id.* (citations omitted). Generally, procedural fencing is absent when the declaratory-plaintiff filed after the start of the state court litigation. *Encompass Indem. Co. v. Gray*, 434 F. Supp. 3d 560, 573 (W.D. Ky. 2020) (citing *Cole's Place*, 936 F.3d at 399).

Chronologically, Progressive's claim preceded Fox's. Progressive filed its federal declaratory judgment action on December 9, 2021. [DN 1 at 5]. Fox filed her state complaint on February 23, 2022. [DN 8-1 at 15]. Relying primarily on statements from her own counsel, Fox argues Progressive expressed a desire to investigate Joshua's residential status, encouraged her to

7

delay litigation pending that investigation, and then—as she waited for the results—filed its declaratory judgment request in federal court to gain a procedural advantage. [DN 8 at 10]; *see also* [DN 8-2 at ¶ 11]. However, the evidence she supplies does not reveal an "improper motive" on Progressive's part. *Flowers*, 513 F.3d at 558. Thus, the Court finds this factor neutral in the analysis.

### (3) Factor Four: Increase of Friction and Improper Encroachment

The fourth factor examines whether a declaratory judgment "would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." *Grand Trunk*, 746 F.2d at 326. The Sixth Circuit has divided this analysis into three additional sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2004)). The Court considers these sub-factors in turn.

### (i) Importance of Underlying Factual Issues to an Informed Resolution of the Case

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Where "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the exercise of jurisdiction would be inappropriate. *Id.* (citation omitted).

Again, Progressive posits that this declaratory judgment action involves a single legal issue: whether its insurance policy covers Joshua. [DN 10 at 8]. But, as addressed under the first factor, this analysis requires the Court to engage in factfinding—specifically, on whether Joshua "resided" with his parents. [DN 8 at 11–12]. In the policy, relative is defined as "any person related to you by blood, marriage, or adoption *while residing in the same household as you*[.]" [DN 1-3 at 5] (emphasis added). While the parties agree Joshua is related to Vickie and Barry Fox, they disagree whether he "resided" in their household. Thus, to make a coverage determination, the Court would still need to ascertain whether Fox "resided" with his parents.

Moreover, the Kentucky state court is considering the same factual issue. In the underlying Kentucky state action, Fox brought a breach of contract claim against Progressive, alleging it "breached the terms of the Policy by . . . refusing to remit the Policy limits to Plaintiff Fox as requested and by applying a definition of residence not contained in the Policy and contrary to Kentucky law." [DN 8-1 at ¶¶ 62–65]. Much like in this federal declaratory judgment action, the state court will have to determine whether Joshua "resided" with Barry and Vickie Fox. Fact-finding by the federal court on this issue "might conflict with similar findings made by the state court." *See Flowers*, 513 F.3d at 560. Thus, this sub-factor weighs against exercising jurisdiction.

### (ii) State Court's Position to Evaluate Factual Issues

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. The Sixth Circuit generally recognizes that "Kentucky courts are in the better position to apply and interpret its law on these issues." *Travelers*, 495 F.3d at 272 (6th Cir. 2007). "This consideration appears to have less force when the state law is clear and when the state court is not considering the issues."

9

*Flowers*, 513 F.3d at 560. In this case, the state court is already considering the coverage issue—Fox's breach of contract claim directly calls into question whether Progressive had an obligation to pay for Joshua's accident. [DN 8-1 at ]. Still, as part of this analysis, the state court will resolve the identical factual issue of where Joshua resided. Since Progressive is "a party to the state court action" and "the scope of insurance coverage . . . [is] before the state court[,]" the Kentucky state court is better positioned to evaluate the relevant factual issue. *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2008). Therefore, this factor weighs against exercising jurisdiction.

        **(iii)    Close Nexus Between Underlying Factual and Legal Issues and State Law and Policy**

The final sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. "[E]ven in cases where state law has not been difficult to apply," the Sixth Circuit "has usually found that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place*, 936 F.3d at 401; *see also Travelers*, 495 F.3d at 273. This last sub-factor weighs against exercising jurisdiction.

    **(4) Factor Five: Alternative Remedy**

Lastly, courts consider the availability of alternative remedies that are "better or more effective" than a federal declaratory judgment. *Grand Trunk*, 746 F.2d at 326. A better alternative may exist where "state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions." *See Encompass Indem.*, 434 F. Supp. 3d at 575 (quoting *Cole's Place*, 936 F.3d at 402). The Court's inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

Realistically, Progressive could have pursued declaratory relief in a Kentucky court under Kentucky law. *See* K.R.S. § 418.040. Despite being the same remedy as pursued here, "the state remedy has the advantage of allowing the state to apply its own law." *Cole's Place*, 936 F.3d at 401. Therefore, this last fact weighs against exercising jurisdiction.

***

To summarize, four *Grand Trunk* factors weigh against exercising jurisdiction, and the third is neutral. Applying the insurance policy's text, ultimately, this declaratory judgment action asks the Court to make factual findings on Joshua's "residence." And, to resolve Fox's breach of contract and statutory claims against Progressive, the Kentucky state court will also need to interpret the policy's language and determine Joshua's residential status. As such, given the possibility for conflicting factual findings and the availability of a Kentucky state court remedy, the Court concludes that exercising jurisdiction would be improper in this case.[1]

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Fox's Motion to Dismiss [DN 8] is **GRANTED**. The Court will enter a judgment consistent with this opinion.

cc: Counsel of Record

Joseph H. McKinley Jr., Senior Judge
United States District Court

June 2, 2022

---

[1] Since the Court will not exercise jurisdiction under the Declaratory Judgment Act, it need not address the parties' *Colorado River* abstention doctrine arguments. *See* [DN 8 at 15–19] (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).